# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 8, 2020

Lyle W. Cayce
Clerk

No. 18-11168

United States of America,

*Plaintiff—Appellant*,

*versus*

Eddie Lamont Lipscomb,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:07-CR-375-M

Before Clement, Ho, and Duncan, *Circuit Judges*.

Per Curiam:*

In 2007, a Dallas police officer arrested Eddie Lipscomb for illegal possession of a sawed-off shotgun. Lipscomb, who had nine prior felony convictions, pleaded guilty to illegal possession of a firearm by a felon in violation of 18 U.S.C. § 922(g). The district court then sentenced Lipscomb to 20 years in prison—a sentence that fell between the 15-year statutory

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 18-11168

minimum required by the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), and the 24-year bottom of the sentencing guidelines. We affirmed in *United States v. Lipscomb*, 619 F.3d 474, 476 (5th Cir. 2010).

Years later, Lipscomb moved for release under 28 U.S.C. § 2255, based on the Supreme Court's holding in *Johnson v. United States*, 576 U.S. 591, 597 (2015), that the residual clause of the ACCA's violent felony definition violated due process. Over the Government's objection, the district court granted Lipscomb's motion, concluding that he did not have the requisite three violent felonies to mark him as an armed career criminal. *See* 18 U.S.C. § 924(e)(1). The district court amended its judgment, reducing Lipscomb's sentence to ten years. *See id.* § 924(a)(2). Lipscomb was immediately released on time served, and the Government appealed.

In the years since the Government filed its appeal, our cases have crystalized in this area. It is settled: Lipscomb's prior convictions designated him an armed career criminal at the time of his sentencing. Because the district court erred in granting Lipscomb's section 2255 motion to the contrary, we vacate that order and direct the district court to reinstate its original judgment.

I.

Under the ACCA, "a person who violates section 922(g)," as Lipscomb did, "and has three previous convictions . . . for a violent felony . . . committed on occasions different from one another," faces a statutory minimum 15-year prison sentence. 18 U.S.C. § 924(e)(1). In relevant part, the statute defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that — (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary," or another enumerated offense. *Id.* § 924(e)(2)(B).

2

No. 18-11168

Among Lipscomb's nine prior felonies at the time of his 2007 arrest were two convictions for burglary—in 1993 and 1994—and four for robbery—one in 1994 and three in 2004. The Government does not argue that the three 2004 robbery convictions were "committed on occasions different from one another," and, since it does not change our analysis, we will treat them as one. *See id.* § 924(e)(1).

In granting Lipscomb's section 2255 motion, the district court concluded that the robbery convictions did not qualify as violent offenses because they did not meet the elements requirement of § 924(e)(2)(B)(i).[1] Our recent cases demonstrate that was incorrect. In *United States v. Burris*, we held that "robbery under Texas Penal Code § 29.02(a) requires the 'use, attempted use, or threatened use of physical force.'" 920 F.3d 942, 945 (5th Cir. 2019); *see* 18 U.S.C. § 924(e)(2)(B)(i). Likewise, we held in *United States v. Herrold*, that "burglary convictions . . . under [Texas Penal Code] Section 30.02(a)(1) [are] generic burglary" as that term is used in 18 U.S.C. § 924(e)(2)(B)(ii). 941 F.3d 173, 182 (5th Cir. 2019) (en banc), *cert. denied*, --- S. Ct. ---, 2020 WL 5882400 (mem.) (Oct. 5, 2020). At the time of his sentencing, Lipscomb had the three previous violent felony convictions to bring him under the ACCA's ambit. It is clear that the district court's order granting Lipscomb's section 2255 motion was in error.[2] Nor does Lipscomb dispute this.[3]

---

[1] We review this decision *de novo. United States v. Fuller*, 453 F.3d 274, 278 (5th Cir. 2006).

[2] *See United States v. Matthews*, 799 F. App'x 300 (5th Cir. 2020) (summarily affirming findings that Texas robbery and Texas burglary are categorically violent felonies for purposes of ACCA).

[3] Lipscomb preserves for further review his argument that *Burris* and *Herrold* were wrongly decided.

No. 18-11168

## II.

Lipscomb does, however, dispute what this court should do about it. We address, and ultimately reject, each of Lipscomb's three proposals.

*First*, Lipscomb argues that the Government is estopped from appealing the district court's order because, during the pendency of this appeal, the Government "twice secured Mr. Lipscomb's reincarceration on allegations that he had violated his conditions of supervised release." If this sounds dubious, it is.

"Estoppel against the government is problematical at best." *United States v. Perez-Torres*, 15 F.3d 403, 407 (5th Cir. 1994) (citing *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414 (1990)). "[I]f estoppel were to be available against the government *at all* it would 'at least' require demonstrating all the traditional equitable prerequisites." *Id.* (quoting *Heckler v. Cmty. Health Servs. of Crawford*, 467 U.S. 51, 61 (1984)) (emphasis added). But, as an equitable doctrine, estoppel requires that "he who comes into equity must come with clean hands." *Id.* (quotation omitted). If not, "the doors of equity are closed to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the other party." *Id.* (quotation omitted). More than that, estoppel "assumes even wider and more significant proportions where the matter in issue concerns the public interest, for in such an instance the denial of equitable relief averts an injury to the public." *Id.* (quotation omitted).

So, in *Perez-Torres*, we declined to estop the defendant's prosecution for illegally reentering the United States after deportation, because "he [was] tainted with extreme bad faith, for he knew such conduct was a felony and nevertheless willfully and purposefully engaged in it." *Id.* Estoppel is equally inapposite here. Lipscomb argues that the Government cannot pursue this appeal because it took remedial action to secure his incarceration after he

violated his supervisory release conditions. But, critically, the Government only took its actions in response to Lipscomb's violations. His hands are far from clean.

Lipscomb offers no persuasive authority to the contrary. All his cited cases are non-binding, out-of-circuit decisions, and none involve the Government or a criminal prosecution. *See Wohl v. Keene*, 476 F.2d 171, 177 (4th Cir. 1973); *In re Greenpoint Metallic Bed Co.*, 113 F.2d 881, 884 (2d Cir. 1940); *Smith v. Morris*, 69 F.2d 3, 4–5 (3d Cir. 1934); *Albright v. Oyster*, 60 F. 644 (8th Cir. 1894). We are unpersuaded.

*Second*, Lipscomb argues that "basic fairness" compels a stay until the Supreme Court considers a case that will determine whether *Burris* was decided correctly. *See Borden v. United States*, 140 S. Ct. 1262 (Mar. 2, 2020) (No. 19-5410) (granting petition for certiorari). Lipscomb notes that the court previously granted the Government's requested stays to allow for resolution of *United States v. Reyes-Contreras*, 910 F.3d 169 (5th Cir. 2018) (en banc), *Herrold*, 941 F.3d at 173, and *Walker v. United States*, 140 S. Ct. 519 (Nov. 15, 2019) (No. 19-373) (granting petition for certiorari), *abrogated by* 140 S. Ct. 953 (Jan. 27, 2020) (dismissing petition because of petitioner's death). Now that the case law supports the Government, Lipscomb asks for the same opportunity.

In arguing for fairness, Lipscomb acknowledges that "we remain bound to follow our precedent even when the Supreme Court grants certiorari on an issue." *United States v. Lopez-Velasquez*, 526 F.3d 804, 808 n.1 (5th Cir. 2008). Whatever his argument's intuitive appeal, we nevertheless "remain bound." We granted the Government's motions to stay its appeal (some of them, as Lipscomb acknowledges, unopposed) in the interest of resolving unsettled questions that directly affected this appeal. Those questions are now settled on the firmest foundations of our court. *See*

No. 18-11168

*Burris*, 920 F.3d at 945; *Herrold*, 941 F.3d at 182 (en banc), *cert. denied*, --- S. Ct. ---, 2020 WL 5882400; *see also Reyes-Contreras*, 910 F.3d at 169 (en banc). We will not delay any longer.[4]

*Third*, if we reverse, Lipscomb asks us to "remand rather than render judgment for the Government," so the district court can decide how to resolve this sentence and the two revocation judgments against Lipscomb. Of course, the district court must preside over the revocation judgments in the first instance. But as to the erroneous section 2255 order, Lipscomb offers no support for his assertion that the district court is better suited to correct its judgment.

\* \* \*

The district court's order granting Lipscomb's motion for release under 28 U.S.C. § 2255 is hereby VACATED and REMANDED for the district court to reinstate its original judgment.

---

[4] In addition to Lipscomb's violations of supervised release, the Government cites five state criminal cases against Lipscomb since his release. These alleged offenses also counsel against further delay. For example, in August 2020, Lipscomb was arrested for a robbery in which he allegedly choked and threatened to kill his ex-girlfriend. Based on that incident, we granted the government's motion to expedite Lipscomb's appeal.